E-FILED
Thursday, 09 April, 2026  03:09:36 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

JONATHON WELLS,
     Plaintiff,

v.

MUELLER WATER PRODUCTS,
INC. and MUELLER CO. LLC,
     Defendants.

Case No. 2:26-cv-02030-JEH-RLH

**Order**

Now before the Court is Defendants Mueller Water Products, Inc. and Mueller Co. LLC's Rule 12(b)(6) Motion to Dismiss (D. 5), Plaintiff Jonathon Wells's Memorandum of Law in Opposition (D. 6), and the Defendants' Reply Brief (D. 10).[1]  For the reasons set forth *infra*, the Defendants' Motion to Dismiss is DENIED IN PART and GRANTED IN PART.

**I**

On January 21, 2026, Defendants Mueller Water Products, Inc. and Mueller Co. LLC (collectively Mueller) removed this lawsuit to federal court.  In his Complaint (D. 2-2), Plaintiff Jonathon Wells states his action arises under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*  Specifically[2], the Plaintiff alleges he began employment with Mueller on or about April 1, 2024 as an electrician.  He suffers from a severe anxiety and panic disorder, of which Mueller

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

[2] At the motion to dismiss stage, a court "accept[s] the well-pleaded facts in the complaint as true and draw[s] reasonable inferences in the plaintiff's favor."  *Bronson v. Ann & Robert H. Lurie Child.'s Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023).

was fully aware through medical documentation provided to its third-party FMLA administrator and because Wells personally informed his manager Kevin Vershay, his supervisor Chad Wawczak, and the Human Resources (HR) Manager Sara Vanagas of his diagnosis and treatment. He told Vanagas that he was being treated for mental health issues.

On July 8, 2025, the Plaintiff was approved for intermittent FMLA leave. On August 8, 2025, during a workplace fire drill, the Plaintiff requested access to shade and water because his prescribed medication causes severe sun sensitivity. Mueller denied this request and instead told him to "lie underneath a semi-trailer." The Plaintiff then asked to utilize his FMLA leave to escape the environmental exposure, but management denied his request, stating he could not use FMLA during a drill.

On August 14, 2025, the Plaintiff experienced a sudden, severe panic attack at work, immediately reported his condition to Supervisor Wawczak, and invoked his pre-approved FMLA leave to exit the facility. Wawczak disallowed the Plaintiff from departing, and instead demanded that Wells first speak with HR and physically escorted Wells to the HR office. Upon arriving at HR, the Plaintiff reiterated to HR Representative Ashley Westjohn that he was in the midst of a medical emergency and needed to leave immediately pursuant to his FMLA rights. Westjohn instructed the Plaintiff to "calm down" and delayed his departure.

On August 14th, the Plaintiff was physically unable to perform standard shut-down procedures – Lock-Out/Tag-Out or LOTO – on the machine he had been repairing before leaving the premises. He thereafter left work, and his absence was subsequently approved by Mueller's third-party FMLA administrator. On August 18, 2025, while the Plaintiff was on approved FMLA leave, Mueller's EHS Manager Lindsay Teel contacted Wells via phone to

2

interrogate him about the August 14th incident.  Approximately three hours later, Westjohn contacted the Plaintiff to inform him he was suspended indefinitely for the alleged safety violation – the failure to perform LOTO.  Mueller did not follow its own medical protocols.  On August 22, 2025, the Plaintiff met with HR to discuss his suspension.  When he objected to being disciplined for a medical emergency and compared it to punishing an employee having a heart attack for not putting tools away, Westjohn responded: "Your medical condition is not quite a heart attack."  At least one other electrician worked on the same machine that the Plaintiff did on August 14th, that co-worker does not suffer from a disability and was not on FMLA leave, and that co-worker was not investigated, audited, or disciplined for safety compliance on that date.  Mueller then demanded the Plaintiff undergo a "fitness-for-duty" evaluation as a condition of his continued employment.

Plaintiff Wells alleges the Defendants interfered with his FMLA rights (Count I), retaliated against him for invoking his rights under the FMLA on August 8th and August 14, 2025 (Count II), subjected him to a hostile work environment characterized by severe and pervasive harassment in violation of the ADA (Count III), treated him less favorably than similarly situated non-disabled employees in violation of the ADA (Count III), failed to provide him reasonable accommodations in violation of the ADA (Count IV), and failed to engage in the interactive process in good faith (Count IV).  The Plaintiff alleges the Defendants' actions have caused him significant damages, including lost wages, severe emotional distress, and exacerbation of his anxiety disorder.  He further alleges he timely filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and/or the Equal Employment Opportunity Commission (EEOC) regarding the disability discrimination and retaliation alleged in his Complaint,

3

and he received a "Notice of Right to Sue" from the relevant agency on or about October 8, 2025.

## II

Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint fails to state a claim. FED. R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief". FED. R. CIV. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.* The Court is to draw all reasonable inferences in favor of the non-movant, but the Court "need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'" *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).

## A

The Defendants argue Count I of the Plaintiff's Complaint alleging FMLA interference fails given that Wells's allegations do not plausibly suggest that his FMLA rights were denied, restrained, or interfered with, or that he suffered

prejudice. To prevail on a FMLA interference claim, a plaintiff must demonstrate: 1) he was eligible for FMLA; 2) his employer was covered by the FMLA; 3) he was entitled to take leave under the FMLA; 4) he provided notice of his intent to take leave; and 5) his employer interfered with, restrained, or denied him FMLA benefits to which he was entitled. *Juday v. FCA US LLC*, 57 F.4th 591, 595 (7th Cir. 2023); *see also* 29 U.S.C. § 2615(a)(1) (providing it is unlawful for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an FMLA right). A plaintiff must also show the violation prejudiced him. *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022) (citing 29 U.S.C. § 2617(a)). The Defendants limit their challenge to the fifth element and requisite showing of prejudice.

Here, the Defendants argue the Plaintiff's own allegations show he was not denied FMLA benefits in relation to his August 14, 2025 episode or thereafter where his new period of non-intermittent FMLA leave was in fact approved and provided promptly. They further argue he has failed to plead his FMLA rights were restrained via a brief meeting which clearly meets the definition of a *de minimis* administrative requirement or that his FMLA rights were interfered with via follow-up phone calls regarding an acknowledged and recent safety concern involving electrical work. Lastly, they argue the Complaint provides no specific statements or facts identifying any prejudice or actual harm resulting to the Plaintiff based on his employer's statements or actions.

The Plaintiff counters that the fact that leave was later processed or approved does not negate the plausibility of interference. As for the Defendants' arguments that there was neither interference nor restraint within the meaning of Section 2615(a), Wells says their arguments improperly ask the Court to resolve factual disputes and draw inferences in the Defendants' favor at the pleading stage. The Plaintiff argues the question is whether the employer's conduct interfered with or restrained the employee's practical ability to exercise rights

5

guaranteed by the FMLA, and the Seventh Circuit has adopted no blanket rule of a "de minimis" exception to Section 2615(a)(1). With regard to prejudice, the Plaintiff argues it is entirely plausible that the Defendants' conduct here impaired his statutory right to take leave free from restraint and resulted in tangible harm, including disciplinary consequences and the chilling of future leave use.

The Plaintiff has sufficiently stated a claim for FMLA interference. Indeed, as the Plaintiff argues, the Defendants expect too much of the Plaintiff and the Court at the pleading stage, and, also as Wells points out, most of their cited cases were (tellingly) at the summary judgment stage. *See, e.g.*, *Zicarelli*, 35 F.4th at 1081 (summary judgment); *McManus v. Saint Mary's Coll.*, 611 F. Supp. 3d 586, 589 (N.D. Ind. 2020) (same); *and Hickey v. Protective Life Corp.*, 988 F.3d 380, 382 (7th Cir. 2021) (same). The Complaint alleges that the Plaintiff was delayed in leaving work on August 14th due to the conduct of his supervisor and HR, he was told to "calm down" by HR that day, and was twice called at home while on approved FMLA leave after August 14th, the second call made to inform him of his suspension. "FMLA interference is 'not limited simply to the denial of leave[]' . . . It also includes 'using the taking of FMLA leave as a negative factor in employment actions and discouraging an employee from using such leave.'" *Paterakos v. City of Chi.*, 147 F.4th 787, 799 (7th Cir. 2025) (quotation marks omitted) (citing 29 C.F.R. § 825.220(b), (c)). Accepting all of the Plaintiff's allegations as true, the Plaintiff adequately alleges the Defendants used the taking of FMLA leave as a negative factor in their later employment action and the Defendants' conduct discouraged Wells from using his leave. To put it as the Plaintiff does, his allegations are sufficient to support a reasonable inference that the Defendants restrained or burdened his ability to exercise his FMLA rights during a medical crisis. Further, whether the Defendants' actions were administrative, coercive, or obstructive is a fact-intensive determination that the Court cannot and will not resolve at this stage

of the proceedings. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (explaining that insofar as a claim must be plausible rather than merely conceivable or speculative under *Iqbal* and *Bell Atl. Corp.*, "the proper question to ask is still '*could* these things have happened, not *did* they happen[]'") (emphasis in original) (quoting *Swanson*, 614 F.3d at 404-05).

As for the showing of prejudice, the Plaintiff's allegations in this regard are somewhat slim, yet sufficient at this stage.    *See Ziccarelli*, 35 F.4th at 1089 ("Interference or restraint alone is enough to establish a violation, and a remedy is available under § 2617 if the plaintiff can show prejudice from the violation."). "Prejudice" means "harm resulting from the violation."  *Id*. at 1084 (citing Section 2617(a)); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (explaining that an employee must prove a violation of Section 2615 as a threshold matter but Section 2617 provides no relief unless the employee was prejudiced by the violation, and the remedy is tailored to the harm suffered).  "The point is that, at this stage, [Plaintiff Wells] has alleged the violation 'damaged' [him] . . . and there is enough in the [Complaint] for [the Court] to infer that [he] was prejudiced by" the Defendants' interference with and restraint of the Plaintiff's FMLA rights. *Warren v. Millennium Hotels & Resorts*, 692 F. Supp. 3d 828, 833 (N.D. Ill. 2023); *see* Pl.'s Compl. (D. 2-2 at ECF p. 17) ("Defendant's actions have caused Plaintiff significant damages, including lost wages, severe emotional distress, and exacerbation of his anxiety disorder.").

**B**

To establish a FMLA retaliation claim, a plaintiff must present evidence of: 1) a statutorily protected activity; 2) a materially adverse action taken by the employer; and 3) a causal connection between the two. *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011).  A FMLA retaliation theory requires proof of discriminatory or retaliatory intent. *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987,

995 (7th Cir. 2010). "To succeed on a retaliation claim, the plaintiff does not need to prove that retaliation was the only reason for [his] termination; [he] may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Id.* (quotation marks and citations omitted).

The Defendants argue the Complaint provides no facts outlining any direct or circumstantial evidence that the decisionmaker took the disciplinary action at issue in order to retaliate against or punish the Plaintiff for taking FMLA leave or that his employer had an animus against his use of the FMLA. They argue further that Plaintiff Wells admits he engaged in the conduct for which he was disciplined (failure to perform LOTO), and so, the Complaint itself highlights a clear non-retaliatory, factually legitimate basis for the discipline issued. They assert an employer cannot retaliate against an employee under the FMLA by utilizing procedures – here, that Wells undergo a fitness-for-duty evaluation – specifically authorized by the FMLA. *See* 29 C.F.R. § 825.312(b) (providing "[a]n employer may seek a fitness-for-duty certification only with regard to the particular health condition that caused the employee's need for FMLA leave[]").

As with his FMLA interference claim, the Plaintiff argues the Defendants' argument improperly imports summary judgment concepts of evidentiary sufficiency and pretext into the pleading stage. He argues, instead, the allegations of proximity between protected activity and discipline, when combined with allegations that Mueller escalated its response immediately after the Plaintiff invoked leave, disciplined him for conduct inseparable from his medical emergency, treated a non-disabled comparator differently, and minimized the seriousness of his condition support a plausible inference that his FMLA leave was used as a negative factor in the decision to suspend him. Pl.'s Resp. (D. 6 at ECF p. 12) (citing 29 C.F.R. § 825.220(c)). He says all those allegations are more than a

8

"naked assertion" of pretext.  As for the Defendants' argument that its requested fitness-for-duty examination was specifically authorized by the FMLA and thus defeats the Plaintiff's claim, Wells responds that this argument conflates statutory authorization in general with lawful application in a particular case.  He insists the Court cannot, at this stage, assume that the examination was uniformly applied, properly noticed, or consistent with business necessity, nor can the Court assume that it was not imposed as part of a retaliatory escalation following the Plaintiff's protected leave invocation.

The Court adopts the Plaintiff's arguments as its reasoning for denying the Defendants' Motion to Dismiss as to this claim.  Again, the Defendants expect too much of the Plaintiff and the Court at the pleading stage, and they rely, in part, on cases that were at the summary judgment stage.  *See, e.g.*, *Long v. Tchrs.' Ret. Sys. of Ill.*, 585 F.3d 344, 346 (7th Cir. 2009) (summary judgment); *Tibbs v. Admin. Off. of the Ill. Cts.*, 860 F.3d 502, 505 (7th Cir. 2017) (same).  Certainly, accepting the Plaintiff's allegations and reasonable inferences therefrom as true, and remembering that "[a]ll the complaint need do is state a grievance" while "[d]etails and proofs come later[,]" the Plaintiff sufficiently alleges the Defendants retaliated against him for exercising his FMLA rights.  *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024).  A reasonable inference that Mueller's adverse action may have been motivated, at least in part, by the Plaintiff's protected activity easily arises from the collection of Wells's allegations.  Here, there is suspicious timing plus more.  Since that is enough at the summary judgment stage to go to the trier of fact, that is certainly enough for the Plaintiff's claim to go forward to discovery here.  *See, e.g.*, *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011) (explaining discharge's timing could support an adverse inference to get past a motion for summary judgment where, "[o]ccasionally . . . an adverse action comes so close on the heels of a protected act that an inference of causation is sensible[]").

As for the required fitness-for-duty examination, as Wells states, the Defendants' argument that electricians work in safety-sensitive roles does not negate plausibility.

## C

### 1

The Court begins with the Defendants' last challenge to the Plaintiff's ADA claims as it pertains to Defendant Mueller Co. LLC. The Defendants argue the Plaintiff's ADA claims against Defendant Mueller Co. LLC must be dismissed due to the Plaintiff's failure to properly exhaust his administrative remedies. Specifically, they say the charge information provided by the Plaintiff at Exhibit A to the Complaint clearly shows that the only respondent to his charge was "Mueller Water Products, LLC"; that is the entity listed as the entity that received notice of Wells's opt-out investigative process, but "Mueller Water Products, LLC" does not match either Defendants' corporate names and appears to be a fictitious entity.

"An ADA plaintiff must file a charge with the EEOC before bringing a court action against an employer." *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018). That requirement has two purposes: 1) it allows the EEOC and the employer an opportunity to settle the matter; and 2) it ensures the employer has adequate notice of the conduct the employee is challenging. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Accordingly, "a party not named as the respondent in the charge may not ordinarily be sued in a private civil action[.]" *Alam*, 709 F.3d at 666. The Plaintiff argues the relevant inquiry is not corporate exactitude, and, at the pleading stage, the Plaintiff is not required to prove notice but rather must plausibly allege exhaustion. He further argues nothing in the present Complaint affirmatively demonstrates a lack of notice.

The Plaintiff alleges in his Complaint *only* that he filed a timely Charge of Discrimination with the IDHR and/or the EEOC regarding disability discrimination and retaliation alleged in the Complaint, that he received a "Notice of Right to Sue" from the relevant agency on October 8, 2025, and that he has fully exhausted his administrative remedies. Pl.'s Compl. (D. 2-2 at ECF p. 17 ¶¶ 35-37). The attached Notice of Opt Out identifies as the Respondent "Mueller Water Products, LLC." *Id*. at Ex. A (D. 2-2 at ECF pp. 23-24). Counts III and IV must be dismissed as against Defendant Mueller Co. LLC due to the Plaintiff's failure to exhaust those claims as to that one Defendant.

The Seventh Circuit has "recognized an exception to the rule that a party not named in the EEOC charge is not subject to suit under [the ADA] where the 'unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance[.]'" *Alam*, 709 F.3d at 666 (quoting *Eggleston v. Chi. Journeymen Plumbers' Loc. Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981)). Here, Plaintiff Wells does not plausibly suggest that the *Eggleston* exception applies and does not otherwise allege any facts in the Complaint regarding whether Mueller Co. LLC had notice of the charge or an opportunity to participate in the conciliation proceedings. As in *Alam*, where the Seventh Circuit rejected the plaintiff's argument that he did not need to allege facts pertaining to the *Eggleston* exception because he alleged he exhausted all of his administrative remedies and satisfied all conditions precedent to bringing his action, this Court rejects the Plaintiff's argument. *Alam*, 709 F.3d at 667. Counts III and IV are dismissed without prejudice as to Defendant Mueller Co. LLC.

**2**

**a**

11

The ADA forbids employers from discriminating with respect to the "terms, conditions, and privileges of employment" based upon an individual's membership in a protected class. 42 U.S.C. § 12112(a). To state a hostile work environment claim under the ADA, a plaintiff must allege: 1) he was subject to "unwelcome harassment"; 2) the harassment was based on his disability; 3) the harassment was so "severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment"; and 4) a basis for employer liability exists. *Huri v. Off. of the C.J. of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833-34 (7th Cir. 2015); *see also Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 829, 852 (7th Cir. 2019) (adopting position of its colleagues who have recognized hostile-environment claims under the ADA). Whether conduct meets the severity bar depends on "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Johnson v. Advoc. Health and Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018).

The Defendants argue the Plaintiff's allegations amount to a single isolated statement ("lie underneath a semi-trailer") that cannot itself be "severe and pervasive;" another statement ("[y]our medical condition is not quite a heart attack") was not objectively hostile as it was a true statement; there is no reasonable basis to conclude the third statement ("calm down") could be considered objectively hostile, harassing, or abusive; and there are no facts in the Complaint to suggest the discipline at issue was asserted in a hostile or abusive manner or was otherwise connected to or part of any pattern of pervasive harassing conduct toward Wells. Countering severity and pervasiveness are not mathematical tests, Plaintiff Wells argues the alleged statements must be evaluated in context – here, an electrician experiencing a medical episode on a job site – the Seventh Circuit has repeatedly emphasized that harassment must be

12

evaluated cumulatively rather than parsed into individual fragments, harassment need not be constant to be actionable, and the Rule 12 inquiry is not whether the alleged statements are "true statements" or "objectively innocuous."

Once again, the Defendants turn the Rule 12(b)(6) standard on its head. They again rely on several cases that were at the summary judgment stage, and they otherwise seek to have the Court look at each statement in isolation and to look at each as the trier of fact. *See, e.g.*, *Christou v. Hyatt Regency-O'Hare*, 996 F. Supp. 811, 813 (N.D. Ill. 1998) (summary judgment); *Wallace v. Heartland Cmty. Coll.*, 48 F. Supp. 3d 1151, 1154 (C.D. Ill. 2014) (same); *see also Equal Emp. Opportunity Comm'n v. Int'l Profit Assocs., Inc.*, No. 01 C 4427, 2007 WL 3120069, at *4 (N.D. Ill. Oct. 23, 2007) (considering the plaintiff's request to bifurcate the trial of the case into two phases). Accepting the individual statements as true together with the alleged context in which they were made, the Plaintiff plausibly alleges that the Defendants' conduct altered the conditions of his employment. *See Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 463 (7th Cir. 2002) (stating that to determine whether contested conduct actually creates an objectively hostile work environment, a number of factors may be considered, and the alleged discriminatory conduct cannot be considered in a vacuum and the employee's claim must instead be evaluated in light of the social context in which the events occurred).

### b

The Defendants next argue the Complaint fails to plausibly allege a claim for disability discrimination under the ADA in relation to the Plaintiff's discipline. To sustain a claim of disparate treatment under the ADA, a plaintiff must show: 1) he suffers from a disability; 2) he is qualified to perform the essential functions of the job; and 3) he has suffered an adverse employment action due to his disability. *McKay v. Vitas Healthcare Corp. of Ill.*, 232 F. Supp. 3d 1038, 1045 (N.D.

13

Ill. 2017) (citing *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014)).  The Defendants argue the discipline at issue here – suspension due to the failure to perform LOTO – cannot be said to be the result of discriminatory actions where the Plaintiff in the Complaint acknowledges the conduct underlying the violation occurred, it involved a safety-related issue, his employer proceeded to investigate the issue, informed him of the discipline, and even met with him afterwards.  The Plaintiff responds that the key question is motive, and in alleging that non-disabled coworkers who failed to perform the same LOTO procedure on the same date and machine were not disciplined, he has sufficiently alleged discrimination under the ADA.  He reiterates that at this stage, he must merely allege facts permitting a plausible inference of discriminatory intent.

True, "It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability."  *Pernice v. City of Chi.*, 237 F.3d 783, 785 (7th Cir. 2001).  However, Plaintiff Wells argues the principle set forth in *Pernice* is not absolute, and cases finding likewise rather stand for the proposition that the ADA does not categorically shield employees from discipline. Notably, *Pernice* involved a plaintiff with an alleged disability of drug addiction and criminal misconduct of drug possession.  *Id.* at 787.  The case discussed therein, *Despears v. Milwaukee County*, 63 F.3d 635 (7th Cir. 1995), involved a disability of alcoholism and drunk driving.  The *Pernice* court expressly observed that the "well-established" rule it identified "is particularly applicable to employees who violate rules relating to drug or alcohol abuse[.]"  237 F.3d at 785. Discussing *Despears* further in a footnote, the *Pernice* court explained that other courts' reading of that opinion "puts it at odds with a host of decisions holding that the ADA prohibits employment discrimination if a covered disability is one motivating factor, even if not necessarily the sole cause, of the adverse

14

employment action." *Id.* at 786 n.3. The *Pernice* court explained those other courts misread *Despears* which held "only that the plaintiff's alcoholism was a partial cause of his drunk driving incident, but that his drunk driving incident was the sole cause of his demotion." *Id.* The other case the Defendants cited, *Tate v. Ancell*, 551 F. App'x 877 (7th Cir. 2014), involving a disability of sleep apnea and a workplace violation of falling asleep at workplace training sessions, was at the summary judgment stage.

All of the foregoing shows that the Defendants' argument makes the issue too simple. The cited cases involved different alleged disabilities, different procedural postures, and different contexts. Even the *Pernice* court acknowledged "the reasons for an employer's decision to take an adverse job action against an employee are often questions of fact . . .". 237 F.3d at 786. Here, the Plaintiff's allegations are not so direct as to enable this Court, on a motion to dismiss, to state Wells's severe anxiety and panic disorder were a partial cause of his departure without performing LOTO, but that his LOTO incident was the sole cause of his suspension. Compare *id.* ("Pernice's second amended complaint suffers from [a] deficiency: it all but directly alleges he was terminated for his criminal misconduct, not because of a 'disability.'"). The Court finds the Plaintiff's allegations are sufficient to state a claim for discrimination under the ADA based upon a disparate treatment theory.

**3**

An employer violates the ADA if it fails to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability[.]" 42 U.S.C. § 12112(b)(5)(A). To state a claim for failure to accommodate, a plaintiff must allege: 1) he was a qualified individual with a disability; 2) the employer was aware of his disability; and 3) the employer failed to reasonably accommodate his disability. *Williams v. Bd. of Educ.*

15

*of City of Chi.*, 982 F.3d 495, 503 (7th Cir. 2020).  A "reasonable accommodation" is "one that allows the disabled employee to 'perform the essential functions of the employment position.'"  *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (quoting 42 U.S.C. § 12111(8)).  "[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches.  *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000).  "After an employee's initial disclosure, the ADA obligates the employer to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances."  *Equal Emp. Opportunity Comm'n v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005).

The Defendants argue, with regard to the August 8, 2025 fire drill, that the Plaintiff's minimal time spent outside of the facility during the drill was in no sense an essential function of his position, and the impromptu request for water and shade had no relation to the performance of his job duties.  With regard to the August 14, 2025 incident, the Defendants argue the Complaint's factual allegations do not allege or suggest that the Plaintiff presented his need to leave on August 14 as a request for a reasonable accommodation pursuant to the ADA or otherwise, or anything other than a request to leave work pursuant to his claimed FMLA rights.  They further argue the Complaint improperly conflates a request to take leave under the FMLA with an accommodation request under the ADA.

The Plaintiff yet again argues the Defendants' arguments impose a heightened pleading standard, and, when the Complaint is read as a whole, it plausibly alleges that Wells requested reasonable accommodations on both August 8th and August 14, 2025.  With regard to the August 8th fire drill, the Plaintiff argues environmental adjustments fall squarely within the ADA's definition of reasonable accommodation, and the Defendants' cited authority does not hold that brief, on-the-job environmental modifications designed to allow an

16

employee to remain at work are categorically excluded.  As for the August 14th incident, the Plaintiff says Mueller's argument improperly elevates form over substance, Wells's request to leave immediately upon experiencing a medical episode was on its face a disability-related request to modify attendance requirements, and he does not rely on paperwork alone.

The Court once more notes that the Defendants rely heavily upon cases that were at the summary judgment stage[3], a fact which lends credence to the Plaintiff's repeat argument that the Defendants expect too much from the Complaint at the motion to dismiss stage.  Applying the correct standard – accepting all alleged facts and reasonable inferences from them as true – the Plaintiff sufficiently states a claim for failure to accommodate on both August 8th and August 14, 2025.

The Defendants delve into the question of whether the Plaintiff's ability to remain outside during a fire drill was an essential function of his job.  The Court assumes as true the inference that the Plaintiff's continuing presence at his job site during a fire drill on August 8th was a necessary part of his job, and therefore the Defendants' failure to provide him with shade or water allegedly needed for his disability-related heat sensitivity amounts to a sufficiently alleged violation of the ADA's requirement that an employer provide reasonable accommodation.  *See, e.g., Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 489-90 (7th Cir. 2014) ("We have said that an employer is generally permitted to treat regular attendance as an essential job requirement . . . .") (internal citation omitted).  As for the Defendants' Reply argument that allegations showing both a request and a refusal are missing, that argument disregards the Plaintiff's allegations that he requested water and shade and instead of receiving one or the other or both, he was told to "lie underneath a semi-trailer."

---

[3] In their Reply (D. 10), the Defendants persist in citing to cases that were at the summary judgment stage. *See, e.g., Jovanovic*, 201 F.3d at 895 (summary judgment); *Sears, Roebuck & Co.*, 417 F.3d at 792 (same).

So, too, does the Plaintiff sufficiently state a claim for failure to provide reasonable accommodation on August 14th. In his Complaint, the Plaintiff alleges he immediately reported his panic attack to Supervisor Wawczak and invoked his right to use his pre-approved FMLA leave to exit the facility. At this stage, the Court agrees with the Plaintiff that the same factual scenario can implicate both the FMLA and the ADA, particularly where a plaintiff's initial duty [under the ADA] to inform the employer of his disability "requires *at most* that the employee indicate to the employer that [he] has a disability and desires an accommodation." *Sears, Roebuck & Co.*, 417 F.3d at 803 (emphasis added). Here, the Plaintiff has alleged Mueller knew of his disability, the Plaintiff reported to Mueller his condition, and he expressed his need to leave for his medical safety – on their face, those allegations are plausible to state an ADA claim for failure to accommodate. "Whether the complaint might be stronger still, it need not be probable, only plausible." *Dunifin v. Costco Wholesale Corp.*, No. 3:25CV688 DRL-SJF, 2026 WL 444753, at *4 (N.D. Ind. Feb. 17, 2026).[4]

### III

For the reasons set forth *supra*, Defendants Mueller Water Products, Inc. and Mueller Co. LLC's Rule 12(b)(6) Motion to Dismiss (D. 5) is DENIED IN PART and GRANTED IN PART. Their Motion to Dismiss is DENIED as to Counts I, II, and III and IV as to Defendant Mueller Water Products, Inc. Their Motion to Dismiss is GRANTED as to Counts III and IV as to Defendant Mueller Co. LLC. Counts III

---

[4] In their Reply, the Defendants include an additional argument in a footnote: "Notably, there is an inherent contradiction between the Plaintiff's FMLA and ADA claims in this case." Defs.' Reply (D. 10 at ECF p. 11 n.1). The Court need not delve into this argument given that it was first made in a reply, was made briefly in a footnote, and cited cases which do not compel the Court to address the argument in this case at this time. *See Cullotta v. United Surgical Partners Int'l, Inc.*, No. 19-cv-06490, 2021 WL 3367193, at *3 (N.D. Ill. Aug. 3, 2021) ("But the Seventh Circuit, despite opportunities to do so . . . have never held that the FMLA and ADA are mutually exclusive."); *Herberger v. Vill. of Bourbonnais*, No. 25-CV-2045, 2025 WL 2918400, at *6 (C.D. Ill. Oct. 14, 2025) (explaining that the court did not need to address the "precise interaction of [the plaintiff's ADA and FMLA claims]" there given the particular facts of that case).

and IV of the Plaintiff's Complaint (D. 1) are DISMISSED WITHOUT PREJUDICE as to Defendant Mueller Co. LLC.

Should a party file a motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorney's fees of the opposing party related to their response to the motion for reconsideration.

This matter is referred to the Magistrate Judge for further proceedings.

*It is so ordered.*

Entered on April 9, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE